IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| JACOB SMITH,<br><br>Plaintiff,<br><br>vs.<br><br>ROEY PFISTERER, JESSICA CONELL, ROXANNE WIGERT, and SGT. JONES,<br><br>Defendants. | CV 20-00005-H-BMM-JTJ<br><br><br>FINDINGS AND RECOMMENDATIONS OF U. S. MAGISTRATE JUDGE |

There are several pending motions in this matter, but the Court specifically requested that Plaintiff Jacob Smith respond only to the portion of Defendants' motion for summary judgment (Doc. 42) concerning exhaustion. (Doc. 48.) Smith has responded (Doc. 53), though he did not file a statement of disputed facts in

1

response to Defendants' statement of undisputed facts. (Doc. 44.)[1] Based on the parties' briefs and the record, the Court concludes that Defendants' motion for summary judgment should be granted on the matter of exhaustion. All other pending motions should be denied as moot.

## I. Factual and procedural background regarding exhaustion

Smith's Complaint hinges on his allegation that another lawsuit he filed in January 2018 caused a series of retaliatory actions by the defendants in this action. (Doc. 2 at 2.)

Smith was recommended to complete a drug treatment program ("ITU") and was on a waiting list to participate, when he had health issues that prevented him from being able to go. (Doc. 44-4 at 2.) He asked to be removed from the ITU waiting list on August 25, 2018, and then again on October 22, and he declined to attend on December 19, 2018. After this third delay, he was told by Defendant Conell that he would have to submit a treatment request to be put back on the list when his medical issues had resolved. (Doc. 44 at 6.) Smith filed that request in September of 2019 (Doc. 44-10), and when, about a month later, he filed a

---

[1] Plaintiff appears to misunderstand how L.R. 56 works. On page 4 of his brief, he states that Defendants "should consider re-filing the document with disputed facts as required." It is the obligation of the party opposing a motion for summary judgment to establish those disputed facts. L.R. 56.1(b).

grievance regarding not being put on the ITU list, Defendant Pfisterer told him he was fifteenth on the list. (Doc. 44 at 8.)

Smith specifically alleges in his Complaint that Defendants Pfisterer and Conell were responsible for removing him from the list in 2018 and again in 2019 (Doc. 2 at ¶¶ 2, 5 and 6.) He asserts that this removal was a form of retaliation for his litigation activities, in violation of the First Amendment to the United States Constitution. (Doc. 2 at 4.)

Next, Smith contends that Defendant Roxanne Wigert improperly designated him as a Security Threat Group ("STG") member in September 2018 as retaliation. This designation occurred before Smith's October 2018 Board of Probation and Parole ("BOPP") hearing, and Smith suggests that he was denied release based on this improper designation. (Doc. 2 at 2.) He claims that he has attempted to get this STG designation changed, and Defendant Wigert improperly refuses to do so.

Smith's retaliation allegations against Defendant Jones are that Jones read a court document of Smith's, asked him about it, and then "immediately" took various adverse actions against Smith, including writing him up for an infraction and adding negative information about Smith in the Offender Management Information System ("OMIS".) Doc. 2 at 3.

Defendants filed a motion for summary judgment, asserting several arguments, including that Smith failed to properly exhaust his administrative

remedies and was therefore not entitled to file suit. (Doc. 43 at 10-15.) Because this issue is potentially dispositive, the Court directed Smith to respond, which he did. The Court is now prepared to enter its Findings and Recommendations.

## II. Analysis

### A. Standard for summary judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Once the defendant submits evidence that supports his motion, the plaintiff cannot rest on the pleadings but must come forward with specific facts showing there is a genuine issue for trial. Fed.R.Civ.P. 56(e).

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). The Court views the facts and inferences from them in the light most favorable to Smith as the non-moving party. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 474 U.S. 574, 587-88 (1986); *Betz v. Trainer Worthham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007). However, his failure to comply with L.R. 56.1 may affect that assessment.

### B. Exhaustion requirement

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 93 - 97 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at

741; *Jones v. Bock*, 549 U.S. 199, 211 (2007). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). Defendants pled failure to exhaust as an affirmative defense in their Answer. (Doc. 12 at 6.) As such, the Court will analyze the failure to exhaust defense first.

The defendant bears the burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S., at 738.)

There are three general situations that can render a prison or jail grievance process unavailable to an inmate. First, an administrative procedure is not

available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct., at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). However, the procedures need not be simple or capable of only one interpretation. *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance

process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable").

Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218. MSP Operational Procedure ("OP") 3.3.3(III)(A)(2) explicitly governs the grievance process and states that "Classification, disciplinary, and any other decision which is subject to a separate appeal procedure or administrative review process, are not grievable under the inmate grievance program." In contrast, grievable issues include "All other issues, including …staff conduct, written policy or procedures…[, and] conditions of confinement" among other things. (MSP OP 3.3.3(III)(B)(1).)

With the exception of emergency grievances, the Inmate Grievance Program involves four steps: (1) informal resolution, (2) formal grievance, (3) appeal to the Warden, and (4) appeal to the Director of the DOC. MSP OP 3.3.3(III)(E), (III)(F), (III)(I), (III)(K). There are timelines for properly submitting grievances. MSP OP 3.3.3(III)(D). "If an inmate fails to advance to the next level of the grievance program within the stated time limit, he will be considered to have forfeited the opportunity to exhaust his administrative remedies under the inmate grievance program." MSP OP 3.3.3(III)(D)(5).

### C. Analysis

The first step in figuring out whether Smith successfully exhausted his administrative remedies is to clarify exactly what he was obliged to grieve, based on his allegations. His claims are outlined above, and he does not allege anything other than First Amendment retaliation violations and state law defamation.

1. Pfisterer and Conell

The only allegations in the Complaint against Roey Pfisterer and Jessica Conell relate to the removal of Smith's name from the ITU waiting list in 2018, 2019, and again in 2019 or 2020. (Doc. 2, ¶¶ 2, 5, 6.) Defendants contend in their brief that Smith filed only two informal grievances regarding this ITU status, neither naming Conell or Pfisterer. The first informal was filed on September 26, 2019 and doesn't mention Pfisterer or Conell at all. It was then grieved to the formal level and named Pfisterer as the person who responded to the informal grievance but did not allege retaliation on Pfisterer's part. (Docs. 43 at 13; 44 at 25 – 26.))

On February 23, 2020, Smith filed another informal grievance about the ITU list, specifically requesting that Conell and Pfisterer amend his treatment level to allow him to complete treatment in the community. (Doc. 44-27 at 155.) Conell responded to this informal and stated that Smith himself had asked to be removed from the ITU list and was told to submit a new treatment request when he was able

to attend. Therefore, his request was denied. Smith did not take this denial to a formal level.

However, neither of these grievances regarding Smith's placement on the ITU list is the grievance that he needed to exhaust. His status on the ITU list is not the root of his constitutional claim in this case. The root is whether his ITU status was affected by unconstitutional First Amendment retaliation against him.

Smith's response is that his obligation to exhaust was fulfilled when Pfisterer responded by putting Smith on the ITU list. (Doc. 53 at 2.) He also says he filed another informal grievance that was not responded to on November 11, 2019 (Doc 53-2 at 2), followed by a formal that was not responded to (Doc. 53-2 at 3), and that was sufficient. (Doc. 53 at 2.) What is puzzling is why these two grievances are not included in the grievance file provided by Defendants. Defendants assert that the file they produced includes all of the grievances they received, and they too have no explanation for why these two grievances do not appear there. (Doc. 57 at 4.) Unlike the two documents submitted to the record by Smith, the documents included in Defendants' exhibit are Bates stamped and include receipt information and various annotations by MSP staff. Regardless, whether Smith actually submitted these grievances may be a disputed fact, but it is not material. Assuming he did, for purposes of summary judgment, these documents do not establish that he properly exhausted his administrative claims.

These two grievances cover the right topic—retaliatory staff conduct that he alleged violated his rights. However, Smith did not comply with MSP OP 3.3.3. He failed to wait long enough after the informal to file the formal, and then he failed to appeal the formal, which was also supposedly not responded to, even to the warden level. MSP OP 3.3.3(F)(6) (requiring him to wait 25 days to file a formal after not receiving a response on an informal) and 3.3.3(G)(5) (allowing him to appeal an unresponded-to formal after 25 days.) He never exhausted any claims alleging unconstitutional staff conduct by Conell and Pfisterer.

Clarifying that Smith did not exhaust his First Amendment claims brings into relief his attempts to shoehorn a non-constitutional issue into a §1983 suit. The record establishes that Smith at least three times asked to be removed from the ITU list for medical reasons and turned down opportunities to appear in front of the BOPP, due to his medical issues. However, he now has completed ITU. His real complaint on the issue of the ITU, though not supported by the record, is that Defendants' conduct, in some way, delayed him from attending ITU and therefore delayed his appearance before the BOPP. Delay in appearing before the BOPP is not actionable under § 1983 unless it is the result of some unconstitutional act. Foreclosed from a claim directly based on the delay of his ITU treatment, Smith attempts to convert it into a First Amendment claim of retaliation. He failed to

exhaust that claim properly, and summary judgment should be entered on behalf of Conell and Pfisterer.

    2. Jones

Smith's claims against Randy Jones go no further than what he alleged in his Complaint. Smith's discovery response, when pressed to elaborate, refine, or bolster his claims against Jones, was he had "nothing to add or disclose that has not been described in" his Complaint. (Doc. 44 at 17.) Therefore, the claims that needed to be exhausted against Jones were that he retaliated against Smith for filing a lawsuit in federal court against other defendants (not Jones.) (Doc. 2 at 3.) This retaliation consisted of issuing a "false" disciplinary infraction, entering comments in the Offender Management Information System about Smith, and verbally attacking and harassing smith. *Id*.

The record shows Smith filed three informal grievances against Jones that he did not pursue to the formal level. (Doc. 44-27 at 144 - 146.) He also filed three formals that he then withdrew. (Doc. 44-27 at 147 – 149.) He never pursued these grievances through the administrative process. Plaintiff's response brief does not even mention Defendant Jones, so he appears to concede that he failed to exhaust any claims against Jones. Therefore, Jones is entitled to summary judgment.

    3. Wigert

Smith's claims against Defendant Roxanne Wigert relate to her designation of him as a member of an STG. Smith contends that this designation amounts to defamation under Mont. Code Ann. 27-1-801. (Doc. 2 at 2.) He also alleges that Wigert continues to deny Smith a review of his STG classification, in violation of policy, and that she labelled him STG as retaliation for his First Amendment conduct. (Doc. 2 at 3 – 4.) There are two aspects of Smith's federal claims against Wigert, then: improper STG classification, and unconstitutional retaliation for First Amendment conduct.[2] Each has its own administrative procedure.

If Smith has a staff retaliatory conduct claim against Wigert, he must grieve it under the process of MSP OP 3.3.3. On October 16, 2018, Smith filed an informal grievance against Defendant Wigert regarding his STG affiliation. He requested four actions, including removal of the STG classification and "no retaliation for filing grievance." (Doc. 44-27 at 135.) In this informal, Smith asserts that Wigert's STG designation was retaliation for "the pending federal civil complaint I am currently litigating against MSP officials." (Doc. 44-27 at 136.) This was the correct path for Smith to follow to administratively exhaust his claims against Wigert. However, the record shows he never pursued these retaliation allegations against Wigert with a formal grievance.

---

[2] The Court is setting aside Smith's Montana state law claims for now. If the federal issues are dispositive, there is no need to reach his state law claims under the Court's supplemental jurisdiction.

Smith followed up on November 14, 2018 with a formal grievance of the same issue, in which he states that the informal response claimed the review followed procedures. The response to this formal is that it was not processed, because it is a classification issue. (Doc. 44-27 at 139.) This formal did not mention Wigert by name or accuse her of any concrete act, including retaliation. The only mention of retaliation in this grievance is to request no retaliation "for filing *this* grievance." (Emphasis added.) If Smith's claim is that Wigert retaliated against him for prior First Amendment conduct by reclassifying him, then this action request does not grieve her supposed *prior* retaliation.

More than a year later, on April 22, 2020, Smith filed a formal grievance regarding STG in which he again claims Wigert was retaliating against him. However, the action he requests is STG review and a copy of Wigert's STG training certificate. (Doc. 44-27 at 141. (The grievance file appears to include the informal on this issue that was never responded to, at 142, with the same request for Wigert's STG training certificate.)) This formal was returned not processed, as a classification matter. The response made no specific mention of the Wigert retaliation allegation. There are no subsequent grievances regarding Wigert. If Smith had intended this to be a grievance related to Wigert's retaliatory conduct, he should have made that explicit. Asking for her training certificate does not make clear that he is specifically alleging First Amendment retaliation against Wigert,

and not just that the classification is incorrect. All told, then, Smith never exhausted his administrative remedies on staff retaliatory conduct against Wigert under MSP OP 3.3.3.

Smith was told several times in response to grievances that a classification issue could not be grieved, and that he needed to follow up with the classification department and his appeals there. (Doc. 44-27 at 139, 141, 143.) Smith's response brief appears to blur the distinction between, and relevance of, a staff conduct grievance and an STG classification appeal. Smith files classification documents from 2018 and 2019, showing he appealed his classification. (Doc. 53-2 at 11 -13.)

MSP OP 4.2.1(I)(2) governs appeals of classification decisions. The procedure is similar to the grievance procedure, providing time limits and layers of appeal, including finally, appeal to the warden. If the classification appeal is relevant, presumably as the administrative remedy available to Smith for the actual STG appeal, it is his burden to establish that he exhausted it. He fails to do that.

However, the classification issue is, as Defendants assert, a red herring. Classification status does not give rise to a constitutional claim that he could pursue in court. "[A] prisoner has no constitutional right to a particular classification status." *Hernandez v. Johnston*, 833 F.2d 1316, 1318 (9th Cir. 1987). Retaliation for First Amendment conduct does provide an avenue to court. Smith failed to get the satisfaction on the STG issue that he sought through the prison

appeals system, so he turned to this suit as a remedy. However, he never grieved Wigert's conduct as retaliation through MSP OP 3.3.3, and therefore, he is not entitled to file suit on that issue. Defendant Wigert is entitled to summary judgment.

## Conclusion

Smith never contends that the administrative processes were somehow "unavailable" to him within the meaning of *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016). Instead, he simply failed to pursue his staff conduct grievances against Conell, Pfisterer, Jones and Wigert and exhaust his administrative remedies. Therefore, Defendants are entitled to summary judgment.

Further, given that the Court should grant summary judgment to Defendants on Hall's § 1983 claims in this matter, the Court should decline its supplemental jurisdiction over Hall's state law claims. 28 U.S.C. § 1367(c)(3); see also *Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) ("The Supreme Court has stated, and we have often repeated, that 'in the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point towards declining to exercise jurisdiction over the remaining state-law claims' " (citation omitted)).

For the foregoing reasons, the Court enters the following recommendations:

1. Defendants' motion for summary judgment should be GRANTED;

2. All other pending motions should be DENIED as moot;

3. The Court should decline to exercise its supplemental jurisdiction over Smith's state law claims; and

4. The clerk of court should enter judgment by separate document.

**NOTICE OF RIGHT TO OBJECT
TO FINDINGS & RECOMMENDATION
AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may object to the Findings and Recommendations within 14 days. *See* 28 U.S.C. § 636(b)(1).[3] Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

DATED this 8th day of April, 2021.

John Johnston
United States Magistrate Judge

---

[3] This deadline allows a party to act within 14 days after the Findings and Recommendation is "served." Federal Rule of Civil Procedure 6(d) allows three additional days after the period would otherwise expire.